[No. G030556. Fourth Dist., Div. Three. Aug. 5, 2002.]

ROSA S., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties
in Interest.

## COUNSEL

Carl C. Holmes, Public Defender, James Steinberg, Assistant Public Defender, and Paul DeQuattro, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Benjamin P. de Mayo, County Counsel, and Michelle L. Palmer, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

Law Offices of Harold LaFlamme and Linda M. O'Neil for Real Party in Interest Vanessa S.

## OPINION

**O'LEARY, J.**—Rosa S. seeks extraordinary relief (Cal. Rules of Court, rule 39.1B) from the orders of the juvenile court that adjudicated her daughter a dependent of the juvenile court, refused to provide her with reunification services, and set a hearing to select a permanent plan (Welf. & Inst. Code, § 366.26).[1] We find jurisdiction is supported by substantial evidence, but the denial of reunification services was in error. Accordingly, we grant the petition in part and order the juvenile court to hold a new dispositional hearing.

### FACTS

Vanessa was first made a dependent of the juvenile court in 1999, when she was 15 months old. Her mother was arrested on charges of possession of

---

[1] All further statutory references are to the Welfare and Institutions Code.

a controlled substance and child endangerment, and was ordered to attend one year of drug treatment and parenting classes in conjunction with her grant of probation. Vanessa was placed with her maternal grandfather and his wife, and the mother moved into their home after she was released from jail. After 12 months of reunification services, Vanessa was returned to her mother under a plan of family maintenance, and six months later, in June 2001, the dependency was terminated.

The present dependency proceeding began in February 2002, when the grandparents reported the mother had disappeared after an argument with them over her neglect of Vanessa. They had not heard from her for a month, and they wanted the protection of the court so the mother could not reappear and take Vanessa out of their home. Before she disappeared, the mother would often. fail to come home from work at the agreed time, leaving Vanessa in the grandparents' care. Vanessa's teeth were neglected, and the grandmother had intervened at least once to seek medical care for the child. When the grandmother refused to babysit in an attempt to force the mother to take responsibility for Vanessa, the mother would wake the child up after she had been put to bed for the night and take her out. The grandparents thought the mother was using drugs again. She had "snappy moods" and was "angry a lot"; furthermore, they found a glass pipe hidden in a sock in the mother's bedroom. Except for a six-month period when Vanessa lived with her mother and her mother's boyfriend (which resulted in the circumstances giving rise to the first dependency), Vanessa has lived her entire life in the grandparents' home.

The petition alleged the mother "has an unresolved problem with substance abuse dating back to at least 1999," her "current whereabouts . . . [are] unknown," and "she is not available to provide care for the child . . . ." The mother's counsel indicated she "submitted" to jurisdiction on a stipulation form, which the juvenile court received into evidence. Pursuant to the stipulation form, the juvenile court found the allegations true and adjudicated Vanessa a dependent under section 300, subdivisions (b) (failure to protect) and (g) (abandonment). The presumed father, Michael W., was incarcerated and signed a waiver of his appearance. His default was entered.

The contested dispositional hearing was held in April 2002. Although Orange County Social Services Agency (SSA) had initially recommended six months of services for the mother, its report prepared for the hearing indicated the social worker had changed her recommendation. Vanessa expressed her desire to stay with her grandparents; the social worker noted that although the mother had received previous reunification services, it appeared she was "again involved in drugs" and placing her child at risk. "In

light of the foregoing, and based on Section 361.5(b)1 [*sic*], of the Welfare and Institutions Code, which states that the whereabouts of the parent or guardian [are] unknown, the undersigned does not believe that further services should be provided at this time." The social worker noted the court had adopted a case plan at the jurisdictional hearing "[i]n the event the mother presents herself to the Court . . . ."

In court, SSA's counsel initialed a stipulation form which proposed, inter alia, that the court "[a]dopt recommendation of Social Services Agency as written herein." Among the several handwritten proposed orders was this: "Court finds pursuant to WIC [Welfare and Institutions Code] section 361.5(a)(3) [*sic*] that the parents have received the maximum FR [family reunification] services provided under the law." The form proposed that SSA "formulate a suitable permanent plan for the minor" and the court set a selection and implementation hearing under section 366.26. Neither the mother's counsel nor the minor's counsel initialed the form; instead, "request argument" was written in the space for the minor's attorney, and "req[uest] cont[inuance] submit" was written in the space for the mother's attorney. The juvenile court denied the request for a continuance and made findings and orders "pursuant to the proposed stipulation."

### DISCUSSION

■ Initially, we dispose of the mother's perfunctory challenge to the jurisdictional findings under section 300, subdivision (b) (failure to protect) and subdivision (g) (abandonment). She claims because Vanessa was "living under the watchful eyes of her grandparents," the child was not at risk of suffering substantial harm from her mother's conduct nor was she really abandoned.

The grandparents reported the mother had been neglecting Vanessa, which we can infer was the result of her resumed drug use. They were unable to influence her behavior, and without the intervention of the juvenile court, they had no power to prevent the mother from taking Vanessa out of their home. The mother's behavior put Vanessa at risk of either being abandoned by her mother (which is what happened) or being subjected to a lifestyle similar to the one that gave rise to her previous dependency. The findings were supported by a preponderance of the evidence.

The mother's more serious challenge is to the denial of services under section 361.5, subdivision (a), which provides: "Except as provided in subdivision (b) of this section . . . , whenever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to

provide child welfare services to the child and the child's mother and statutorily presumed father . . . . [¶] . . . [¶] [C]ourt-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent . . . ." SSA claims the termination of the previous dependency should not give the mother a new period of reunification services where the second petition is close in time to the previous one and based on the same parental conduct. SSA's contention is directly contrary to the statutory scheme, and the juvenile court erred in denying services on that basis.

Unfortunately, this straightforward question of statutory construction is clouded by claims of waiver, which are based on the Orange County juvenile court's persistent and ill-advised use of the proposed stipulation form. SSA claims the mother waived her right to challenge the denial of services on appeal because her counsel submitted to the proposed finding that she had already received the maximum services allowed by law.

This court has strictly enforced unambiguous written stipulations in the juvenile court, notwithstanding parents' claims that the forms are not intended to bind the parties but to guide the trial court. (See, e.g., *In re Dani R.* (2001) 89 Cal.App.4th 402 [106 Cal.Rptr.2d 926]; *In re Eric A.* (1999) 73 Cal.App.4th 1390 [87 Cal.Rptr.2d 401].) The situation is less clear, however, where the party merely submits to the findings rather than stipulating to them. In *In re Richard K.* (1994) 25 Cal.App.4th 580 [30 Cal.Rptr.2d 575], the court explained: "[I]t is not uncommon in dependency proceedings for a parent to 'submit' on a social services report. [Citation.] By submitting on a particular report or record, the parent agrees to the court's consideration of such information as the only evidence in the matter. Under such circumstances, the court will not consider any other evidence in deciding whether the allegations are true. [Citation.] [¶] Notwithstanding a submittal on a particular record, the court must nevertheless weigh evidence, make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved. [Citation.] In other words, the parent acquiesces as to the state of the evidence yet preserves the right to challenge it as insufficient to support a particular legal conclusion. [Citation.] Thus, the parent does not waive for appellate purposes his or her right to challenge the propriety of the court's orders." (*Id.* at pp. 588-589, fn. omitted; see also *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237-1239 [9 Cal.Rptr.2d 402].)

The *Richard K.* court distinguished submitting on the social worker's *recommendation* from submitting on the social worker's *report*. "In our view, the mother's 'submitting on the recommendation' constituted acquiescence

in or yielding to the social worker's recommended findings and orders, as distinguished from mere submission on the report itself. . . . [¶] In other words, the mother was not disputing that the court should adjudge her children dependents, order them removed from her custody and provide a reunification plan. If, as occurred in this case, the court in turn makes the recommended orders, the party who submits on the recommendation should not be heard to complain." (*In re Richard K.*, *supra*, 25 Cal.App.4th at pp. 589-590.)

Here, the proposed stipulation asked the court to adopt SSA's recommendations "as written herein" and contained numerous handwritten findings and orders, deletions of preprinted text, and interlineations. The parties dispute not only whether the record indicates submission on the report or the recommendation, but also whether the social worker actually recommended the findings in the proposed stipulation. The report recommended no services, but did not recommend setting a selection and implementation hearing under section 366.26 or the preparation of a permanent plan, recognizing that the mother could resurface within six months and receive services.[2] Does this mean all the proposed findings and orders handwritten on the form were SSA's recommendations? And does counsel's inscription of the word "submit" on a form such as this constitute a submission on the report or on the recommendation?

This case aptly illustrates the pitfalls inherent in a practice of using a form that does not clearly reflect the understanding of the parties. We recognize the ever-increasing caseload that confronts juvenile court attorneys and bench officers, and we acknowledge the toll taken on those who must adjudicate these highly poignant dependency cases. Yet we cannot excuse the shoddy records which result from the informality that has been incorporated into juvenile court proceedings in an apparent effort to accommodate the enormity of calendared cases. While trial court judicial officers may complain that the appellate courts simply do not appreciate the challenges they face in the trenches, they apparently do not appreciate the challenge presented to the appellate court by a sloppy and incomplete record. Try as we might, we cannot make a silk purse out of a sow's ear. As we review a case, we are, for better or worse, confined to the record before us.

Records in dependency cases increasingly suggest that bench officers are adopting short cuts in an attempt to address overwhelming caseload demands. But dependency cases are among the most compelling that come

---

[2]Section 361.5, subdivision (b)(1) states that reunification services need not be provided to a parent if the juvenile court finds by clear and convincing evidence that her whereabouts are unknown. Subdivision (d) of that section states, "If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision."

before the superior court, and the inherent tension between the rights of the parent and the best interests of the child sometimes requires more time to resolve than presently available. If escalating numbers are impacting the effective management of dependency cases, it may be appropriate for the Presiding Judge to consider affording the juvenile court more judicial resources.[3]

Responsibility for adequate due process does not end with the court. Juvenile court attorneys contribute to the problem when they attempt to expedite the process by participating in use of a form which on its face is ambiguous. Cryptic notes on signature lines do not adequately state a party's position. It is incumbent upon attorneys to devote sufficient time and effort to afford their clients proper representation. Efficiency and effectiveness are not mutually exclusive. It is often wise to spend a prudent amount of time at the outset so as to avert future trouble.

Fortunately, the result in this case does not depend on our resolution of the waiver issue. Even if waived, we have discretion to hear the mother's challenge to the denial of reunification services because it is purely a question of law. (*In re N.S.* (2002) 97 Cal.App.4th 167, 171, fn. 3 [118 Cal.Rptr.2d 259]; *In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1153-1154 [94 Cal.Rptr.2d 693].) Accordingly, we turn now to the legal question of whether a parent is precluded from receiving reunification services solely because she received 18 months of services in a previous dependency proceeding where she successfully reunified with her child.

The answer is clearly "No." Section 361.5, subdivision (a) directs the juvenile court to order services *whenever* a child is removed from the custody of her parent *unless* the case falls within the enumerated exceptions in subdivision (b). Subdivision (b) of section 361.5 authorizes the denial of services where a parent failed to reunify with a sibling in a previous dependency and "has not subsequently made a reasonable effort to treat the problems that led to removal" (§ 361.5, subd. (b)(10)), or where "the parent . . . has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior treatment for this problem during a three-year period immediately prior to the filing of the petition . . ." (§ 361.5, subd. (b)(13)).[4] But none of the 15 exceptions authorize the denial of services based on a previous dependency where reunification was successful.

[3]In making judicial assignments, presiding judges must take into account "the needs of the public and the court as they relate to the efficient and effective management of the court's calendar." (Cal. Rules of Court, Judicial Admin. Rules, rule 6.603(c)(1)(A)(i).)

[4]The mother here arguably falls within section 361.5, subdivision (b)(13), but the court did not make the required findings and the evidence of resumed drug use is not strong enough for us to make a clear and convincing finding as a matter of law.

SSA argues that allowing the mother more time to reunify would contravene the legislative intent to provide permanency and stability for a child. Characterizing the period of time between the termination of the previous dependency proceeding and the new petition as a mere "interruption in the proceedings," SSA urges us to follow the cases denying additional services to a parent where a subsequent or supplemental petition is filed in an existing dependency. (See, e.g., *In re Barbara P.* (1994) 30 Cal.App.4th 926, 934 [36 Cal.Rptr.2d 27].) But these cases are easily distinguishable. Where a supplemental or subsequent petition is filed in an existing dependency proceeding, the parent has not yet been successful enough to justify the termination of juvenile court jurisdiction over his or her child. Where jurisdiction has been terminated, however, the parent-child relationship is restored to its former status, free from governmental interference absent extraordinary circumstances, and a new dependency proceeding must include all the statutory provisions designed to protect that relationship.

DISPOSITION

Let a writ of mandate issue directing the juvenile court to vacate its dispositional orders and hold a new dispositional hearing. The selection and implementation hearing, currently set for August 6, 2002, is vacated.

Sills, P. J., and Bedsworth, J., concurred.

On August 20, 2002, the opinion was modified to read as printed above.