[No. E035877. Fourth Dist., Div. Two. Jan. 10, 2005.]

In re HARMONY B., a Person Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,
Plaintiff and Respondent, v.
EZEQUIEL B. et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

_____

  \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IIIC.

832

**COUNSEL**

Andrea R. St. Julian, under appointment by the Court of Appeal, for Defendant and Appellant Ezequiel B.

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Appellant Mandy D.

Alice C. Shotton, under appointment by the Court of Appeal, for Defendant and Appellant Ruth B.

William C. Katzenstein, County Counsel, Julie Koons Jarvi and Robert Pepper, Deputy County Counsel, for Plaintiff and Respondent.

Harry Zimmerman, under appointment by the Court of Appeal, for Minor.

OPINION

HOLLENHORST, J.—

## I.  INTRODUCTION

Mandy D. (mother) and Ezequiel B. (father), the parents of Harmony B. (born in March 2003), appeal from an order of the juvenile court terminating their parental rights under Welfare and Institutions Code[1] section 366.26. Ruth B. (grandmother), the paternal grandmother of Harmony, also appeals from the order.

Father argues that the juvenile court (1) failed to inform him of his right to file a writ petition challenging the findings and orders at the referral hearing, and that failure was a violation of due process allowing the court to review those findings and orders in the instant appeal; (2) erred in denying reunification services; and (3) abused its discretion in denying his request for a continuance of the section 366.26 hearing. Mother joins father's contentions. Grandmother argues that the juvenile court abused its discretion by refusing to continue the section 366.26 hearing and in ordering that the foster parents' adoption application be given preference over all other applications.

We conclude that because the juvenile court failed to give father notice of his right to file a writ petition to challenge the findings and orders at the referral hearing, father may raise those challenges in this appeal. However, we find no merit in father's challenges to those findings and orders; the juvenile court did not err in denying reunification services. We further conclude that the juvenile court did not abuse its discretion in refusing to continue the section 366.26 hearing and in ordering preference for the foster parents' adoption application.

## II.  FACTS AND PROCEDURAL BACKGROUND

In May 2003, the Riverside County Department of Public Social Services (DPSS) filed a petition in the juvenile court alleging that Harmony, then one

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

month old, came within section 300, subdivisions (b) and (g). The petition alleged that (1) mother had been arrested on an active warrant and for being a parolee at large; (2) parents had been receiving reunification services for approximately 14 months regarding their other children, Ezequiel B., Jr. (born in 1993), and Desiree D. (born in 2002), due to substantiated allegations of general neglect and substance abuse, and parents had failed to complete their court-ordered case plan and had not reunified with those two children; and (3) mother was incarcerated and her whereabouts were unknown. The application for the petition also stated that father suffered from schizophrenia and could not care for Harmony without assistance.

When Harmony was detained, the parents were questioned about her placement. Both parents stated that they wanted grandmother, who lived in Washington State, to take legal guardianship of Harmony, and they wanted their two older children placed with grandmother. The detention report indicated that an Interstate Compact on Placement of Children (ICPC) evaluation of grandmother's home had already been requested.

Father and grandmother appeared at the detention hearing on May 21, 2002. The court found that a prima facie case for an out-of-home detention had been established and ordered Harmony detained in foster care or with an appropriate relative. The court ordered the DPSS to assess relatives for placement and to commence an ICPC with the State of Washington. The court also ordered frequent and liberal supervised visitation for parents and grandmother.

In the jurisdictional/dispositional report, the DPSS requested that no reunification services be offered to parents because they had failed to complete their service plan with respect to their older children. The report noted that the ICPC proceedings could not commence with respect to Harmony until there had been a finding of jurisdiction, but that such proceedings were underway with respect to the two older siblings. Meanwhile, Harmony was doing well in foster placement, and father and grandmother had visited her. Mother remained incarcerated.

On July 30, the court held a six-month review hearing with respect to the two older children at which the court terminated reunification services and set their matter for a permanent plan hearing. Immediately thereafter, the court conducted the jurisdictional/dispositional hearing for Harmony. The court sustained the allegations of the petition, declared Harmony a dependent, and removed her from her parents' custody. The court ordered that an expedited ICPC be commenced with the State of Washington. The court denied reunification services to parents based on the orders terminating reunification services as to the older siblings and set the matter for a permanent plan hearing.

On December 1, 2003, the date scheduled for the section 366.26 hearing, county counsel requested that the matter be put over for four months pending completion of the ICPC. Counsel for father joined the request, observing, "The paternal grandmother is here, very frustrated in the fact it is taking so long for the ICPC to be completed. It would facilitate placement of all three together. I'm not sure if the Court can make further orders or requests of the Department regarding expediting the matter." The court stated that it trusted the DPSS was making all reasonable efforts, and the court continued the hearing until March 30, 2004.

At the rescheduled hearing on March 30, county counsel informed the court that the ICPC still had not been completed and asked the court to order another expedited ICPC. The court agreed to do so and set the hearing for May 10.

In the DPSS report for the section 366.26 hearing, the DPSS recommended that parental rights be terminated so Harmony could be adopted by her foster parents. The DPSS explained that the ICPC with Washington State had not been finalized, and Harmony had bonded with her foster parents, who wished to adopt her.

Washington State closed the ICPC request for a home study of grandmother's home, stating that grandmother's FBI fingerprint check had not been completed. Although grandmother had submitted fingerprints, the card was rejected because the tips of her fingers had not been correctly printed. However, other aspects of the ICPC had been completed, and a home study had been tentatively approved.

The section 366.26 hearing was held on May 10, 2004, attended by father and grandmother. Father requested that the matter again be continued so the ICPC on grandmother's home could be completed, but the trial court denied the request. The court found that Harmony was adoptable and that adoption was in her best interests. The court terminated parents' parental rights and referred the matter for adoptive planning. The court ordered that the foster parents' adoption application be given preference over any other application.

## III.   DISCUSSION

### A.   *Grandmother's Standing*

■ "In juvenile dependency proceedings, as in civil actions generally [citation], only a party aggrieved by the judgment has standing to appeal. [Citations.]" (*In re Lauren P.* (1996) 44 Cal.App.4th 763, 768 [52 Cal.Rptr.2d 170].) Standing to appeal is jurisdictional. (*In re Frank L.* (2000) 81

Cal.App.4th 700, 703 [97 Cal.Rptr.2d 88].) " 'Whether one has standing in a particular case generally revolves around the question whether that person has rights that may suffer some injury, actual or threatened.' [Citation.]" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034 [111 Cal.Rptr.2d 243].)

■ In *Cesar V.*, the court held that a grandmother, "although not a party, has standing to seek appellate review of the denial of her request for placement under section 361.3." (*Cesar V. v. Superior Court, supra,* 91 Cal.App.4th at p. 1034.) The court explained that the grandmother's "separate interest in her relationship with [her grandchild], is legally protected in section 361.3, which confers upon a grandparent the right to preferential consideration for placement." (*Cesar V.,* at pp. 1034–1035.)

■ Section 361.3 provides: "(a) In any case in which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative." In this context, preferential consideration means that "the relative seeking placement shall be the first placement to be considered and investigated." (§ 361.3, subd. (c)(1).) Here, however, grandmother does not appeal from the denial of a request for placement under section 361.3, but from the termination of parental rights following the section 366.26 hearing. We therefore conclude that grandmother lacks standing in this appeal, and her appeal must be dismissed.

### B. *Denial of Reunification Services*

Father, joined by mother, argues that the juvenile court erred in denying them reunification services.

#### 1. *Failure to Provide Notice of the Right to File a Writ Petition*

■ Father asserts that the juvenile court erred in failing to inform him of the right to file a writ petition to challenge the findings and orders made at the hearing setting the section 366.26 hearing. An order setting a section 366.26 hearing is not appealable; rather review of such an order may be had only by filing a petition for an extraordinary writ. (*In re Cathina W.* (1998) 68 Cal.App.4th 716, 719 [80 Cal.Rptr.2d 480].) The juvenile court must provide oral notice to all parties present at the setting hearing and notice by mail to all other parties that such a writ may be filed. (Cal. Rules of Court, rule 1456(f)(18).) When notice is not given, the parents' claims of error occurring at the setting hearing may be addressed on review from the disposition following the section 366.26 hearing. (*In re Cathina W., supra,* 68

Cal.App.4th at pp. 722–726; *In re Rashad B.* (1999) 76 Cal.App.4th 442, 450 [90 Cal.Rptr.2d 462] ["Since appellant was not given notice of her right to file a writ petition, and since that failure of notice is ultimately attributable to an error of the court, appellant's claims of error are cognizable on appeal even though they would serve to undermine the referral order."].)

The DPSS concedes that the record does not reflect that notice was provided to father informing him of his right to bring a writ petition, and father has therefore shown good cause to raise issues concerning the setting hearing in this appeal from the orders following the section 366.26 hearing.

## 2. *Denial of Services*

Father contends that the juvenile court abused its discretion in denying reunification services. Here, the juvenile court terminated reunification services as to the older siblings at the hearing on July 20, 2003. The juvenile court found, with respect to reunification services as to the siblings, that "[t]he extent of progress that's been made by mother and father toward alleviating or mitigating the causes necessitating placement has been unsatisfactory in that mother and father have failed to make substantive progress. They've failed to complete the Court-ordered case plan."

■ Immediately thereafter, the court denied reunification services as to Harmony under section 361.5, subdivision (b)(10).[2] The court found that reunification services were not in Harmony's best interests. The court stated, "the Court ordered termination of reunification services for siblings . . . of this child because mother and father failed to reunify with the sibling . . . after the sibling . . . had been removed from mother and father pursuant to Section 361 of the Welfare and Institutions Code. That mother and father are same parents described in subdivision (a). The Court makes the findings that both mother and father, each of them, has not subsequently made a reasonable effort to treat the problems that lead [*sic*] to the removal of the sibling . . . of that child from the parent." We affirm an order denying reunification services if the order is supported by substantial evidence. (*Curtis F. v. Superior Court* (2000) 80 Cal.App.4th 470, 474 [95 Cal.Rptr.2d 232].) "In making this determination, we must decide if the evidence is reasonable,

---

[2] Section 361.5, subdivision (b)(10) provides that the court need not order reunification services for parents if it finds by clear and convincing evidence: "That the court ordered termination of reunification services for any siblings of the child because the parent or guardian failed to reunify with the sibling after the sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling of that child from that parent or guardian."

credible, and of solid value, such that a reasonable trier of fact could find the court's order was proper based on clear and convincing evidence. [Citation.]" (*Ibid.*)

Father's argument centers on the fact that the court denied services on the same day it terminated services as to the siblings. He argues that the court erred in applying section 361.5, subdivision (b)(10) because that section requires that a two-pronged test be satisfied: both that (1) services have been terminated as to the siblings, and the parent has not reunified with the siblings and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling from that parent. Father argues that making the required findings to support both prongs of the test necessarily requires the passage of time between the termination of services as to one child and the denial of services as to another child. Thus, father argues, there was no evidence to support the juvenile court's findings in the instant case.

■ With respect to the first prong of his proposed test, father argues that the siblings' dependency proceedings had not proceeded to the point where it could be determined whether he would reunify with them, and he claims that nothing in the record indicates that he failed to reunify with the siblings. Father's argument overlooks the plain language of the statute.[3] The statute provides that the court has previously "ordered termination of reunification services for any siblings of the child *because* the parent . . . failed to reunify with the sibling after the sibling had been removed from that parent." (§ 361.5, subd. (b)(10), italics added.) It does not provide that court has "ordered termination of reunification services for any siblings of the child *and* the parent . . . failed to reunify with the sibling after the sibling had been removed from that parent." Thus, on its face, the statute does not require any lapse of time between the termination of services as to one sibling and the denial of services as to another sibling to satisfy the first prong of the test.

■ Although not directly on point, *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483 [83 Cal.Rptr.2d 777], provides useful analysis. In that case, this court held that section 361.5, subdivision (b)(10) could be applied to deny services based on judicial activity that occurred after the current child was detained. In that case, the court terminated parental rights as to one child on September 9, 1998, and selected the permanent plan of adoption for her. On the same date, the court terminated reunification services as to a second child and calendared a selection and implementation hearing for her. On October 23, 1998, the dispositional

---

[3] *Rosa S. v. Superior Court* (2002) 100 Cal.App.4th 1181 [122 Cal.Rptr.2d 866], on which father relies, is inapposite. That case addressed "whether a parent is precluded from receiving reunification services solely because she received 18 months of services in a previous dependency proceeding where she successfully reunified with her child." (*Id.* at p. 1188.)

hearing took place for a the third child (the current child), and the Department of Public Social Services took the position that reunification services should be denied as to the current child under section 361.5, subdivision (b)(10). The juvenile court held, however, that because the mother's rights to the first child had not been terminated until after the current child was detained, section 361.5, subdivision (b)(10) did not apply. (*Riverside County Dept. of Public Social Services,* at pp. 486–487.) This court held that the juvenile court had erred. We held that "subdivision (b)(10) of section 361.5 authorizes the court to deny services to any parent whose rights to another child have been terminated, or who has another child under a permanent plan after reunification efforts have failed. *It does not matter whether the described actions were taken before or after the current dependency petition was filed; the only requirement is that they have occurred before a disposition is made in the instant case."* (*Riverside County Dept. of Public Social Services,* at p. 491, italics added; see also *Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1148 [96 Cal.Rptr.2d 104] [extending the reasoning of *Riverside County* to hold that reunification services need not be provided to a parent when reunification services have been terminated as to another child even though the subject petition was filed before that termination of reunification services].)

In support of his argument concerning the second prong of his proposed test, father cites *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 [118 Cal.Rptr.2d 118] (*Renee J. II*). In *Renee J. II*, the juvenile court denied reunification services under section 361.5, subdivision (b)(10) because mother had previously failed to reunify with another child. The juvenile court failed to make the additional finding that the mother had " 'not subsequently made a reasonable effort to treat the problem which led to the removal [of the prior child].' " (*Renee J. II*, at p. 1455.) The matter was appealed to the Supreme Court for an interpretation whether the quoted language applied when services were denied based on termination of services as to a prior child (former subpart (A)) or only when services were denied based on whether parental rights had been terminated as to a prior child (former subpart (B)). (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735 [110 Cal.Rptr.2d 828, 28 P.3d 876] (*Renee J. I*).) The Supreme Court found that the statute, as it then provided,[4] was ambiguous, and principles of statutory construction did not assist in resolving the issue. Based on its determination of "recent legislative

---

[4] The version of section 361.5, subdivision (b)(10) under review then provided, "That (A) the court ordered a permanent plan of adoption, guardianship, or long-term foster care for any siblings or half-siblings of the minor because the parent or guardian failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent or guardian pursuant to Section 361 and the parent or guardian is the same parent or guardian described in subdivision (a), or (B) the parental rights of a parent or guardian over any sibling or half-sibling of the minor had been permanently severed, and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the

trends toward restricting the circumstances in which reunification services must be provided," (*Renee J. I.,* at p. 740) the Supreme Court held that the "no-reasonable-effort clause" applied only to former subpart (B) of section 361.5, subdivision (b)(10). (*Renee J. I.,* at p. 748.)

■ In response, the Legislature quickly amended section 361.5, subdivision (b)(10) to clarify that the "no-reasonable effort" clause did apply to both former subparts (A) and (B). The Senate Rules Committee analysis explained, " '[i]n current law, a court may choose not to provide reunification services when a parent previously failed to reunify with a sibling of the child in question and when a parent's parental rights have been terminated with a sibling of the child in question. The law also requires a finding that the parent has not made reasonable efforts to treat the problems that led to removal of the sibling. These amendments clarify that the requirement of a finding that the parent had not made reasonable efforts to treat the problems applies to both situations above, failure to reunify and permanent severance of parental rights. . . .' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading Analysis of Assem. Bill No. 1695 (2001–2002 Reg. Sess.) as amended Sept. 7, 2001, pp. 1–2, quoted in *Renee J. II, supra,* 96 Cal.App.4th at p. 1457.)

■ The inclusion of the "no-reasonable effort" clause in the statute provides a means of mitigating an otherwise harsh rule that would allow the court to deny services simply on a finding that services had been terminated as to an earlier child when the parent had in fact, in the meantime, worked toward correcting the underlying problems. The court in *Renee J. II* explained, "If the evidence suggests that despite a parent's substantial history of misconduct with prior children, there is a reasonable basis to conclude that the relationship with the current child could be saved, the courts should always attempt to do so. Courts must keep in mind that '[f]amily preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced.' [Citation.] The failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case." (*Renee J. II, supra,* 96 Cal.App.4th at p. 1464.)

■ Thus, when some time has elapsed after the termination of reunification services with respect to one child, the court appropriately must take into account the parent's reasonable efforts to correct the underlying problems in the interim before the court denies reunification services with respect to a second child. When, however, as in the instant case, the two proceedings

---

problems that led to removal of the sibling or half-sibling of that minor from that parent or guardian."

occur in immediate proximity, the trial court required finding under the "no-reasonable effort" clause is a formality because the parent's circumstances necessarily will not have changed.[5] In our view, the statute was amended to provide a parent who has worked toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings; it was not amended to create further delay so as to allow a parent, who up to that point has failed to address his or her problems, another opportunity to do so. We conclude the trial court did not abuse its discretion in denying reunification services.

### 3. *Best Interests of the Child*

Father contends that the best interests of Harmony should have led the juvenile court to provide reunification services even if the court's finding that father came within the purview of section 361.5, subdivision (c). The statute provides, "The court may not order reunification for a parent . . . described in paragraph . . . (10) . . . unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."

Here, the court found, by clear and convincing evidence, that reunification would *not* be in Harmony's best interests. It was undisputed that father suffers from schizophrenia and could not care for Harmony by himself. Harmony had been placed almost since birth in a stable "fos-adopt" family with whom she appeared to be doing fine. Thus, substantial evidence supports the juvenile court's finding.

### C.  *Denial of Request for Continuance*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5] Any other interpretation of section 361.5, subdivision (b)(10) would create an unworkable standard. For example, how much time would have to have elapsed between the termination of services as to one child and the denial of services as to a second child before the court could make a finding that the parent has failed to make reasonable efforts?

[*]See footnote, *ante,* page 831.

## IV. DISPOSITION

Grandmother's appeal is dismissed. In all other respects, the judgment is affirmed.

Ramirez, P. J., and Gaut, J., concurred.

A petition for a rehearing was denied February 4, 2005, and the petition of appellant Ezequiel B. for review by the Supreme Court was denied April 13, 2005.