[No. B189559. Second Dist., Div. Seven. Oct. 26, 2006.]

In re ALBERT T., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
PEGGY L., Defendant and Appellant.

## COUNSEL

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**PERLUSS, P. J.**—The juvenile court denied family reunification services to Peggy L., the mother of Albert T., under Welfare and Institutions Code section 361.5, subdivision (b)(10),[1] which provides that family reunification services need not be offered to a parent of a dependent child if services for a sibling of that child previously had been terminated because the parent failed to reunify with the sibling and the parent thereafter has not made a reasonable effort to treat the problems that led to the sibling's removal. On appeal Peggy contends, although the juvenile court previously terminated reunification services for Albert's brother, Alan C., because Peggy failed to reunify with him, the evidence at the disposition hearing for Albert was insufficient to support the court's implied finding she had not subsequently made a reasonable effort to treat the problems that led to Alan's removal. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Alan's Removal from Peggy; Peggy's Partial Compliance with the Case Plan; and Termination of Family Reunification Services*

On October 22, 2003, the Los Angeles County Department of Children and Family Services (Department or DCFS) detained six-year-old Alan, an emotionally disturbed child (Alan had been diagnosed as having both bipolar disorder and attention deficit hyperactivity disorder (ADHD)), because Peggy, who is cognitively delayed (with an IQ of 55), reported to the Department she was no longer able to care for him. Albert, then only 11 months old, was also detained.

In a petition filed pursuant to section 300 on October 27, 2003, and subsequently amended on November 26, 2003, the Department alleged Peggy "is unwilling and unable to provide the child [Alan] with ongoing care and supervision due to the child's mental and emotional problems. . . . [P]rior DCFS voluntary services and Harbor Regional Center services have been ineffective in resolving the family problems . . . ."[2] The lack of a parent to

---

[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Documents from the dependency proceedings relating to Alan, including the amended petition, the Department's reports and the court's minute orders, although part of a single juvenile court file for both Alan and Albert, were not presented to the court at the time of the disposition hearing and were not originally included in the record on appeal. We have taken judicial notice of certain of that material after giving notice to the parties pursuant to Evidence Code sections 452, subdivision (d), 455, subdivision (a), and 459, subdivision (a).

provide care was also alleged to place Albert at risk of physical harm. The amended petition further alleged Alan's father, Richard C., had physically abused him; Richard had a history of alcohol abuse that remained unresolved and limited his ability to care for Alan; and Richard had physically assaulted Peggy in Alan's presence.

In its jurisdiction and disposition report, filed concurrently with the November 26, 2003 amended petition, the Department stated, "Alan was removed from home because his parents could not cope with his behavior. He has been diagnosed as ADHD." The Department also explained Peggy had received services from Harbor Regional Center, as well as assistance from a Life Steps worker, who helped her in the home and with daily living skills. According to the Department, "Mother has ample resources but is still unable to care for her child, requesting that he be removed from her care and placed in foster care."

Following a successful mediation, on February 20, 2004, the court ordered the petition further amended by interlineation: The primary allegation regarding Peggy's inability to provide ongoing care and supervision remained the same except for deletion of the reference to Peggy's "refusal" (as opposed to inability) to continue to care for Alan. The counts alleging physical abuse of Alan by Richard and Richard's assault of Peggy in Alan's presence were both dismissed. The court then sustained the amended petition as to Alan. Albert was dismissed from the petition and returned to Peggy's care and custody.

Alan was declared a dependent child of the court and ordered suitably placed. Peggy and Richard received family reunification services with monitored visitation. The court ordered that Alan be provided individual therapy and conjoint therapy with Peggy and Richard, as well as with his stepfather Albert T., Sr. (Albert's father). Peggy and Richard were ordered to participate in a parenting program addressing Alan's special needs and any additional education and training programs recommended by Alan's therapist, as well as to participate in appropriate individual counseling to meet Alan's needs, as directed by the conjoint therapist, including sessions dealing with Alan's special needs, the effects of medication and the effects of aggressive behavior and family violence on children. Although in its jurisdiction and disposition report the Department had recommended that Peggy and Richard be ordered into domestic violence counseling, the parties' mediated case plan did not provide for such counseling; and the court's disposition order did not include a requirement that Peggy complete domestic violence counseling.

At the six-month review hearing held pursuant to section 366.21, subdivision (e), on June 24, 2004, the juvenile court found Peggy in compliance with the case plan, but Richard not in compliance. At the 12-month review hearing on December 22, 2004 (§ 366.21, subd. (f)), Peggy was again found in compliance with the case plan; and Richard again not in compliance.[3] In its status review report for the 12-month hearing, the Department indicated Peggy continued to receive mental health services, parenting instructions and conjoint therapy and stated, "Mother suffers from mild retardation . . . although mother continues to attend [the required programs] and make progress[,] Mother's progress is slow and Alan's numerous behavior problems are complex and very hard to deal with for any normal person." The Department also noted Peggy had advised Alan's social worker that she and Albert T., Sr., had recently had several arguments and that on November 13, 2004, Albert T., Sr., slapped her across the face. Albert T., Sr., was arrested on a domestic violence charge, and Peggy reported she was looking for a new place to live with Albert.

The Department's report for the permanency review hearing held pursuant to section 366.22 on April 22, 2005, stated Peggy had not received family mental health services since the December 2004 hearing and had had only minimal contact with Alan. According to the report, on February 12, 2005, Peggy told Alan's case worker, "You can keep Alan until I'm ready to take him back. Sometime later when Alan is older or maybe just leave him where he is until I'm ready and everything in my life is more settled." The Department also noted Peggy and Richard had a history of domestic violence; and, although they were no longer living together, Peggy was again in a relationship (with Albert T., Sr.) with domestic violence. "Mother's mental retardation, her inability to comprehend the danger that domestic violence poses to her and her children compounded with Alan's diagnosis and behaviors is what initially brought Alan to this Court today." As described by the Department in the jurisdiction and disposition report it subsequently prepared for Albert in December 2005, "Mother had adequate participation in these programs [ordered as part of her case plan for Alan] yet was not able to grasp the skills needed to handle Alan."

The juvenile court found Peggy only in partial compliance with the case plan, terminated family reunification services and ordered the Department to provide permanency planning services for Alan.

---

[3] Reunification services were terminated for Richard based on his lack of compliance with the case plan at a continued section 366.21, subdivision (f), hearing on January 24, 2005.

## 2. *The Voluntary Family Maintenance and Voluntary Family Reunification Agreements, and Albert's Return to Peggy*

As a result of the domestic violence incident in November 2004, on December 8, 2004, Peggy and Albert T., Sr., entered into a voluntary family maintenance (VFM) agreement with the Department to provide a safe environment for Albert. Peggy agreed to move with Albert to a friend's house until she could find her own apartment and to complete parenting classes and individual counseling addressing domestic violence. Albert T., Sr., agreed to complete the domestic violence program that had been ordered following his arrest.

Shortly after moving from their old apartment, Peggy, who was unable to obtain stable housing, arranged for Albert to stay with a paternal aunt. The Department assessed the aunt's home; Albert was formally placed in the home; and on February 16, 2005, the original VFM agreement was converted to a voluntary family reunification (VFR) agreement. Peggy again agreed to participate in individual counseling that addressed domestic violence issues.

Peggy began domestic violence classes on March 16, 2005. Starting in June 2005 Peggy enrolled in programs at Su Casa Family Crisis and Support Center and on August 31, 2005, completed "psycho-educational individual counseling addressing domestic violence issues" and parenting classes. She also secured appropriate housing for herself and Albert. At that point, according to the Department, "[H]aving completed her counseling and secured education in domestic violence from Su Casa the VFR was closed and minor Albert . . . was released to his mother."

## 3. *Albert's Removal and the Department's Recommendation That No Reunification Services Be Provided*

On October 28, 2005, a referral was initiated for Albert through the child abuse hotline, which included allegations Albert was at risk of physical abuse from Peggy and possible sexual abuse from Peggy's current male companion, Ron M. Upon investigation the Department learned Albert had continued to live with his paternal aunt subsequent to his release to Peggy in August 2005. According to the aunt, neither Peggy nor Albert T., Sr., visited Albert or helped her financially with his care.

The Department's investigators received information Peggy had struck her housemate's seven-year-old daughter. In addition, Peggy's service providers at the Harbor Regional Center and Life Step indicated their concern about Peggy's relationship with Ron M., who had a history of domestic violence. As a result, Albert was detained on November 1, 2005, and placed with his paternal aunt; a new section 300 petition was filed concerning Albert on November 3, 2005.

In addition to allegations relating to Peggy's purported physical abuse of her housemate's daughter, which were ultimately dismissed, the Department's petition alleged that Peggy and Albert T., Sr., had a history of domestic violence and that Peggy had created a dangerous home environment for Albert by exposing him to her current male companion, Ron M., who also had a history of domestic violence. The petition also alleged Peggy and Albert T., Sr., left Albert with his paternal aunt without making an adequate plan or provisions for his ongoing care and supervision. Finally, with respect to Alan, the petition alleged he is currently a dependent child of the juvenile court "due to the mother, Peggy L[.]'s inability to provide [Alan] with ongoing care and supervision due to [Alan]'s mental and emotional problems. Further, [Alan] is receiving Permanent Placement Services. Further, the conduct of the child's mother is endangering to the child in that the mother has failed to reunify with the child's sibling. Further, prior Juvenile Court and DCFS services have failed to resolve the family problems in that the mother is unable to provide care and supervision for the child, Albert T[.] . . . ."

The Department's detention report, dated November 2, 2005, noted Peggy had a history of prior domestic violence in her relationships and observed, "[A]lthough [Peggy] has attended and completed Individual Counseling addressing Domestic Violence mother again has chosen a partner who has a history of arrests for Domestic Violence." The petition specifically stated the Department may seek an order pursuant to section 361.5 that no reunification services be provided to the family. An addendum report, dated November 3, 2005, recommended no reunification services be provided Peggy without further explanation.

At the November 3, 2005 detention hearing the juvenile court found a prima facie case had been established for detaining Albert and ordered him temporarily placed with his paternal aunt. After a continued detention hearing on November 7, 2005, at which Peggy's appointed counsel entered a denial on her behalf, the court set a pretrial resolution conference for December 12, 2005.

On December 12, 2005, counsel for the parties agreed to an amended petition and submitted the jurisdictional determination to the court on the papers that had been filed by the Department. The court sustained the counts of the amended petition under section 300, subdivision (b) (failure to protect), as described above, and dismissed the balance of the petition (including allegations under section 300, subdivisions (a), (g) and (j)). A contested disposition hearing was scheduled for January 12, 2006.

### 4. *Albert's Disposition Hearing*

The contested disposition hearing, originally scheduled for January 12, 2006, was continued to February 6, 2006, to allow updated information to be presented to the court regarding Peggy's progress in counseling and with her visitation. At the February 6, 2006, hearing, the court received, read and considered the Department's jurisdiction/disposition report prepared for the December 12, 2005 pretrial resolution conference; a two-page "last minute" information report, dated January 12, 2006, which contained a short report from Albert's paternal aunt regarding Peggy's and Albert T., Sr.'s visits with the child; and an interim review report dated February 6, 2006.

With respect to the issue of family reunification services for Peggy, the jurisdiction/disposition report contained a brief summary of Alan's dependency proceedings and stated, "Pursuant to WIC 361.5(b)(10) no reunification services need to be provided to mother as the court previously ordered a permanent plan for another sibling and mother failed to reunify her son who is currently in adoptive planning." Elsewhere, the report described Peggy's completion of parenting classes and individual counseling addressing domestic violence issues under the VFR agreement but did not indicate that Peggy's efforts in that regard were relevant to the reunification issue under section 361.5, subdivision (b)(10).

The interim review report indicated that neither Albert nor Peggy had begun counseling. As to the issue of reunification services, this report simply stated, "DCFS is recommending that mother not receive reunification services as mother has another child who is receiving permanent placement services. WIC 361.5 (b)(10)."

At the February 6, 2006 hearing the court also received two exhibits from Peggy: (1) A psychological evaluation from Dr. Alan J. Glasser confirming Peggy is mildly mentally retarded within a trainable range of intelligence. Dr. Glasser concluded Peggy could achieve social and vocational skills adequate for minimum self-support in the proper training facility. However, he also indicated she would probably need guidance and assistance if subjected to unusual social or economic stress. (2) A report from Harbor Regional Center, also confirming Peggy's mild mental retardation and assessing her ability to live independently and function appropriately with Albert.

After proffering her two exhibits, Peggy's counsel, who had originally set the matter for a contest, asked to proceed by way of argument only. Counsel then addressed section 361.5, subdivision (b)(2), which authorizes the court to deny reunification services to a parent or guardian who is suffering from a mental disability that renders him or her incapable of utilizing those services.

Counsel for the Department and the court corrected Peggy's counsel, explaining the recommendation for no reunification services was based on section 361.5, subdivision (b)(10). The Department counsel's stated, "We are asking for father to receive reunification services but not for the mother because she has lost a child before."

No evidence (other than as contained in the Department's reports received by the court) was offered by any party regarding Peggy's effort or lack of effort to treat the problems that led to Alan's removal. Without any additional argument on the point, the court ordered, "[P]ursuant to 361.5(b)(10), there will be no family reunification services offered to mother . . . ." The court made no findings as required by section 361.5, subdivision (b)(10), that "this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent or guardian."[4]

## DISCUSSION

### 1. *Standard of Review*

When the sufficiency of the evidence to support a juvenile court's finding or order is challenged on appeal, the reviewing court must determine if there is substantial evidence, contradicted or uncontradicted, that supports it. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393 [32 Cal.Rptr.3d 526]; *Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96 [42 Cal.Rptr.3d 504] ["A court reviews an order denying reunification services under section 361.5, subdivision (b) for substantial evidence"].) Under this standard of review we examine the whole record in a light most favorable to the findings and conclusions of the juvenile court and defer to the lower court on issues of credibility of the evidence and witnesses. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733–734 [7 Cal.Rptr.2d 60].) We must resolve all conflicts in support of the determination and indulge all legitimate inferences to uphold the court's order. Additionally, we may not substitute our deductions for those of the trier of fact. (*In re Katrina C.* (1988) 201 Cal.App.3d 540, 547 [247 Cal.Rptr. 784]; *In re John V.* (1992) 5 Cal.App.4th 1201, 1212 [7 Cal.Rptr.2d 629]; *In re Eric B.* (1987) 189 Cal.App.3d 996, 1004–1005 [235 Cal.Rptr. 22].)

However, substantial evidence is not synonymous with any evidence. (*In re Savannah M., supra*, 131 Cal.App.4th at p. 1393.) "A decision supported by a

---

[4] Like the court's oral statement of its ruling as reflected in the reporter's transcript, the minute order for February 6, 2006, simply states, "The mother per WIC 361.5(b)(10) is not entitled to family reunification services." No findings are recorded in either the reporter's transcript or the clerk's minute order in support of that ruling.

mere scintilla of evidence need not be affirmed on appeal. [Citation.] Furthermore, '[w]hile substantial evidence may consist of inferences, such inferences must be "a product of logic and reason" and "must rest on the evidence" [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations].' [Citation.] 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*Id.* at pp. 1393–1394; accord, *In re David M.* (2005) 134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411].)

### 2. *Section 361.5, Subdivision (b)(10), and the Denial of Reunification Services*

■ "It is difficult, if not impossible, to exaggerate the importance of reunification in the dependency system." (*In re Luke L.* (1996) 44 Cal.App.4th 670, 678 [52 Cal.Rptr.2d 53].) The juvenile court is required to order family reunification services whenever a child is removed from the custody of his or her parent or guardian unless the court finds by clear and convincing evidence that one of the 15 exceptions set forth in section 361.5, subdivision (b), applies. (§ 361.5, subd. (a); *Rosa S. v. Superior Court* (2002) 100 Cal.App.4th 1181, 1188 [122 Cal.Rptr.2d 866]; see *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 487 [83 Cal.Rptr.2d 777] ["there has long been a presumption that parents would receive reunification services"].)

■ Section 361.5, subdivision (b)(10), the exception invoked by the Department and the juvenile court in this case, authorizes denial of reunification services if the court finds, "That the court ordered termination of reunification services for any siblings or half-siblings of the child because the parent or guardian failed to reunify with the sibling or half-sibling after the sibling or half-sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent or guardian."

To apply section 361.5, subdivision (b)(10), therefore, the juvenile court must find both that (1) the parent previously failed to reunify with a sibling and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling. (*Cheryl P. v. Superior Court, supra,* 139 Cal.App.4th at p. 96; *In re Harmony B.* (2005) 125 Cal.App.4th

831, 840 [23 Cal.Rptr.3d 207].)[5] "The inclusion of the 'no-reasonable effort' clause in the statute provides a means of mitigating an otherwise harsh rule that would allow the court to deny services simply on a finding that services had been terminated as to an earlier child when the parent had in fact, in the meantime, worked toward correcting the underlying problems." (*In re Harmony B.*, at p. 842; see *Renee J. v. Superior Court, supra*, 96 Cal.App.4th at p. 1464 ["If the evidence suggests that despite a parent's substantial history of misconduct with prior children, there is a reasonable basis to conclude that the relationship with the current child could be saved, the courts should always attempt to do so. . . . The failure of a parent to reunify with a prior child should never cause the court to reflexively deny that parent a meaningful chance to do so in a later case. To the contrary, the primary focus of the trial court must be to *save* troubled families . . . ."].)[6]

3. *The Juvenile Court Erred in Denying Reunification Services to Peggy*

Peggy does not dispute that the first prong of section 361.5, subdivision (b)(10), has been satisfied: The court terminated reunification services for Albert's older sibling, Alan, in April 2005 after she failed to reunify with him. However, Peggy emphasizes that, notwithstanding an express statutory requirement for findings before application of the subdivision (b)(10) exception, the juvenile court failed to make any finding that she had not made a reasonable effort to treat the problem that led to Alan's removal and argues the Department failed to present sufficient evidence that would justify such a

---

[5] Even if the court finds section 361.5, subdivision (b)(10), applies, it has discretion to order reunification services if it determines reunification is in the best interests of the child. (§ 361.5, subd. (c); *Renee J. v. Superior Court* (2002) 96 Cal.App.4th 1450, 1464 [118 Cal.Rptr.2d 118] ["Section 361.5 authorizes, but *does not require*, the court to deny services in the specified circumstances [a finding that § 361.5, subd. (b)(10), applies]."].) Peggy does not contend the juvenile court abused its discretion by failing to order reunification services notwithstanding the applicability of section 361.5, subdivision (b)(10).

[6] In *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748–749 [110 Cal.Rptr.2d 828, 28 P.3d 876], the Supreme Court held the former version of section 361.5, subdivision (b)(10) (former § 361.5, subd. (b)(10)(A), as amended by Stats. 1999, ch. 805, § 1), authorized the juvenile court to deny reunification services to a parent who had previously failed to reunify with another child without an additional finding the parent had not subsequently made a reasonable effort to treat the problem that led to the removal of the first child, concluding the no-reasonable-effort-to-treat finding was required only under former section 361.5, subdivision (b)(10)(B), which applied to a parent who had had his or her parental rights terminated in the case of a prior child. Shortly after that decision, the Legislature amended the statute, dividing former subdivision (b)(10)(A) and (B) into subdivision (b)(10) and a new subdivision (b)(11) and expressly requiring the juvenile court to make a no-reasonable-effort-to-treat finding before denying reunification services under either subdivision. (Stats. 2001, ch. 653, § 11.3; see generally *Renee J., supra*, 96 Cal.App.4th at pp. 1457–1458 ["That amendment restructured the clauses of subdivision (b)(10), creating a new subparagraph (b)(11), to clarify that the 'no reasonable effort' clause *did* apply to both (former) subparts (A) and (B)."].)

finding in this case. The Department in response argues the record supports the implied finding Peggy had not made a reasonable effort to treat her issue with domestic violence, which it contends was a "concern" at the time of Alan's removal.

■ Given the importance of reunification services in the dependency system, we have considerable doubt as to the propriety of implying findings from an otherwise silent record to justify denial of those services, particularly when the Legislature has not only mandated findings by clear and convincing evidence before applying any section 361.5, subdivision (b), exception but also specifically repeated the requirement of court findings with respect to the no-reasonable-efforts prong of subdivision (b)(10). Even if we were to assume the juvenile court implicitly found Peggy had not made a reasonable effort to treat the problem that led to Alan's removal, however, we would reverse that implied finding for want of substantial evidence. (See *Cheryl P. v. Superior Court, supra,* 139 Cal.App.4th at p. 98 ["Even if we were to assume the juvenile court implicitly found that [the parents] had not made a reasonable effort to treat the problems that led to the removal of [their son], we conclude a trier of fact could not reasonably make such a finding by clear and convincing evidence."].)

    a.   *Was domestic violence the problem that led to Alan's removal?*

The section 300 petition filed with respect to Albert on November 3, 2005, alleged his sibling, Alan, is currently a dependent child of the juvenile court due to Peggy's "inability to provide the child's sibling with ongoing care and supervision due to the sibling's mental and emotional problems." Elsewhere the petition alleged Peggy's history and current problems with domestic abuse, but did not suggest that domestic violence was any part of the reason for either Alan's removal or his continued status as a dependent child. The detention report filed with Albert's petition, as well as the jurisdiction and disposition report subsequently prepared by the Department, similarly quoted the sustained portion of the petition filed with respect to Alan, which relates only to Peggy's inability to provide care because of Alan's mental and emotional problems. Those reports discussed Peggy's history of relationships involving domestic violence but, like the petition itself, did not suggest domestic violence was a problem that led to Alan's removal. In fact, in none of its reports recommending denial of reunification services under section 361.5, subdivision (b)(10), did the Department discuss the reasonable-effort-to-treat aspect of this exception, let alone identify the problem Peggy failed to address. Instead, apparently relying on the pre-2002 state of the law, the Department purports to justify its recommendation simply by stating "no reunification services need to be provided to mother as the court previously

ordered a permanent plan for another sibling and mother failed to reunify her son who is currently in adoptive planning."

The Department, of course, is correct in its assertion on appeal that domestic violence was a "concern" at the time of Alan's removal. Indeed, as originally filed the November 2003 amended petition, which identified both Alan and Albert as needing protection, alleged Alan's father had physically assaulted Peggy in Alan's presence. But that count was dismissed from the petition; and Albert was returned to Peggy's care, belying any contention that domestic violence made Peggy's home unsafe at that time or that Alan's removal was predicated, even in part, on concerns about domestic violence. (Indeed, the jurisdiction and disposition report filed in Alan's case expressly stated, "Alan was removed from home because his parents could not cope with his behavior.") Moreover, there is no indication the original section 300 petition with its allegation of domestic violence was before the juvenile court at Albert's disposition hearing when it ordered no reunification services for Peggy. Even if the juvenile court was aware of this "concern," however, the reasonable-efforts-to-treat prong of section 361.5, subdivision (b)(10), is directed not to *all* the issues that confronted a parent in a prior dependency proceeding but specifically to "the problems that led to the removal of the sibling."

> b. *Did Peggy make a reasonable effort to treat the domestic abuse issue?*

The most serious problem with the juvenile court's denial of reunification services under section 361.5, subdivision (b)(10), is the implied finding Peggy failed to make a reasonable effort to treat the issue of domestic violence in her life (even assuming that was at least part of the problem that led to Alan's removal). In fact, Peggy completed several court-ordered and Department-supervised programs specifically directed to domestic violence. First, as part of the reunification services ordered when Alan was removed, Peggy participated in individual counseling that addressed, among other issues, the effects of aggressive behavior/family violence on children. (The Department's original recommendation that Peggy complete domestic violence counseling was not part of the mediated case plan and was not ordered by the court.) Peggy was found in full compliance with her case plan at both the six-month and 12-month review hearings and partial compliance when reunification services were terminated, as required by statute, at the 18-month hearing after the court concluded Alan could not be returned to Peggy at that time. (See § 366.21, subd. (f); *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016–1017 [70 Cal.Rptr.2d 603] [juvenile court has discretion to permit reunification services beyond the 18-month statutory deadline and to continue an 18-month hearing only in truly exceptional circumstances].) As described by the Department in Albert's jurisdiction and disposition

report prepared in December 2005, "Mother had adequate participation in these programs yet was not able to grasp the skills needed to handle Alan."

Second, in connection with the VFM and VFR agreements between Peggy and the Department, which continued past the date of termination of reunification services for Alan, Peggy enrolled in and completed both parenting classing and individual counseling addressing domestic violence issues. In closing the VFR and authorizing Albert's return to Peggy in late August 2005, the Department itself reported Peggy had "completed her counseling and secured education in domestic violence."

What then is the evidence to support an implied finding Peggy has not made a reasonable effort to treat her problem of entering into relationships that involve domestic violence? Apparently the fact that Peggy has not resolved the problem: In its appellate brief the Department reports, "Mother's relationship with Alan's father was violent; there were domestic violence incidents between mother and Albert T., Sr.; and mother's current boyfriend has a history of domestic violence. Her actions regarding the men she welcomes into her home and the lives of her children have not changed even though she received years of services—both voluntary and through the juvenile court—addressing the specific issue." Although the Department's account of Peggy's failure to avoid relationships with violent men may be true, it misconstrues the requirements of section 361.5, subdivision (b)(10), which is directed to the parent's reasonable efforts to treat the problem, not the success or failure of those efforts. "[T]he 'reasonable effort to treat' standard found in former subdivision (b)(10) (now subd. (b)(10) and (11)) is not synonymous with 'cure.' The mere fact that [the parent] has not entirely abolished her drug problem would not preclude the court from determining that she had made reasonable efforts to treat it." (*Renee J. v. Superior Court, supra*, 96 Cal.App.4th at p. 1464; accord, *Cheryl P. v. Superior Court, supra*, 139 Cal.App.4th at p. 97.)

In sum, if it applied any standard at all in denying reunification services to Peggy, the juvenile court applied the wrong standard. The Department failed to present any meaningful evidence to satisfy its burden of proving Peggy has not made reasonable efforts to treat her problem of maintaining relationships with men who engage in domestic violence. To the contrary, the evidence in the record at Albert's disposition hearing demonstrates she participated in and completed court-ordered and voluntary programs addressing that issue. Although further reunification services may ultimately be unsuccessful in allowing Albert to return home, Peggy has earned the right to try.

## DISPOSITION

The portion of the juvenile court's February 6, 2006 disposition order denying reunification services to Peggy is reversed. The matter is remanded to the juvenile court to conduct a new hearing to determine the appropriate family reunification services to be provided to Peggy and Albert and to conduct further proceedings not inconsistent with this opinion.

Woods, J., and Zelon, J., concurred.