Filed 6/11/13  R.B. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| R.B. et al.,<br><br>        Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF THE COUNTY OF HUMBOLDT,<br><br>        Respondent;<br><br>HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES et al.,<br><br>        Real Parties in Interest. | A138007<br><br>(Humboldt County<br>Super. Ct. Nos. JV110165,<br>JV110166, JV120196) |

Mother seeks an extraordinary writ (Cal. Rules of Court, rule 8.452) directed to the juvenile court's order terminating or denying reunification services and setting a Welfare and Institutions Code[1] section 366.26 hearing as to her three children, J.B., age 12, D.A., age four, both of whom have special developmental needs, and R.A., age seven months. Father also seeks an extraordinary writ directed to the juvenile court's order terminating or denying reunification services and setting a section 366.26 hearing as to D.A. and R.A. as to whom he is the presumed father. Both parents contend there is no substantial evidence to support the trial court's finding that reasonable reunification

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise noted.

1

services were provided as to the older siblings. They also contend the court erred in consolidating the infant's case with that of her older siblings and continuing her dispositional hearing until after reunification services had been terminated for the older children, thereby allowing services to be bypassed under section 361.5, subdivision (b)(10). Mother contends further that there is no substantial evidence to support the court's finding that the two older siblings should be treated as a sibling group for the purpose of determining the applicable timeline for reunification. We shall deny the petitions.

**Factual and Procedural History**

On November 22, 2011, the Humboldt County Department of Health and Human Services (the department) filed non-detain petitions as to the older siblings, D.A. and J.B. Following amendments in February 2012, the parents waived the right to contest the petitions, and the court took jurisdiction over the two minors on February 16, 2012. The court sustained allegations that "mother has been unable to maintain a safe and sanitary home by failing to keep the home clean and by failing to change [D.A.'s] soiled clothing in a timely manner." The court also sustained allegations that D.A. was present during a domestic violence incident during which father struck mother causing her to be taken to the emergency room. The court also sustained the allegation that mother has not met J.B.'s developmental, medical and dental needs, including specifically encopresis, and has not maintained voluntary family maintenance services provided by the department to assist her with his behavioral and medical needs.

On April 5, prior to the contested disposition hearing, the minors were detained at the request of minors' counsel. On April 9, the department filed supplemental petitions requesting more restrictive placements for both children. The petitions alleged that voluntary family maintenance services had been provided for the parents beginning in March 2011 to assist the parents in obtaining necessary medical and dental treatment for the children but that the parents failed to follow through with the recommended treatment and scheduled medical and dental appointments. On May 24, the parents submitted to jurisdiction on the supplemental petition. At the dispositional hearing on June 28, the

court ordered reunification services for both parents. A six-month review hearing was set for December 27, 2012.

In the meantime, in October 2012, a third sibling, R.A., was born. The department almost immediately filed a section 300 petition and detained the child because the mother tested positive for methamphetamines at the hospital. At the detention hearing, father was elevated to presumed father status and both parents submitted to detention. The jurisdictional hearing was set for November 2012, but continued at mother's request to December 6.

On December 5, the day before the jurisdiction hearing in R.A.'s case, the department filed a report for the upcoming review hearing in the older siblings' case. The report recommended the continuation of reunification services for both parents. On December 6, parents submitted to jurisdiction in R.A.'s case. R.A.'s dispositional hearing was set for January 10, 2013.

On December 10, the department filed an amended notice of review hearing for the two older siblings, this time indicating that the department was requesting termination of reunification services and the setting of a permanency planning hearing. The parents objected to the recommendation and requested a contested hearing, which was set for January 22, 2013.

On January 8, the department submitted a disposition report in R.A.'s case. The report states that parents have failed to engage in services provided in connection with the older siblings and that a report has been submitted in their case recommending the termination of reunification services. On that basis, the social worker opines that the department "does not believe that it is in the best interests of [R.A.] to order family reunification services for her parents for the next six months, as the parents have had almost eighteen months of services." The department requested that R.A.'s case trail the older siblings case. "If the parents are granted additional family reunification services as to the older children, then [the department] will create findings and orders and a case plan that complements that outcome. If the court terminates family reunification services as to

3

the mother and father, then [the department] will provide the court with findings and orders and a case plan that matches that outcome."

At the hearing on January 10, counsel for parents objected to the continuance of R.A.'s dispositional hearing and the department's recommendation that her case trail that of her older siblings. The court asked for further briefing and set the contested disposition hearing for January 22.

On January 15, the department filed a motion to consolidate the children's cases. The department also filed an addendum to the dispositional report in R.A.'s case recommending that the court bypass services to the parents under section 361.5, subdivisions (b)(10) and (13).[2]

On January 22, the court granted the department's motion to consolidate the actions for purposes of holding a combined six-month review hearing in the older siblings' case and dispositional hearing in R.A.'s case. The contested hearing was commenced on February 1. On February 21, after receiving considerable documentary and testimonial evidence, the court terminated services as to the older siblings, denied services as to the younger sibling and set permanency planning hearings for all three children. Notice of the setting of the section 366.26 hearing was mailed to parents the

---

[2] Section 361.5, subdivision (b) provides in relevant part: "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian. [¶] . . . [¶] (13) That the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

4

following day. Both parents sought writ review of the order terminating reunification services and setting the section 366.26 hearing.[3]

## Discussion

1. *The trial court did not err in terminating reunification services and setting a section 366.26 hearing as to D.A.*

When a child is younger than three years old when removed from the parent's physical custody, reunification services are presumptively limited to six months. (§ 361.5, subd. (a)(1)(B); *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 843.) "If the child was under three years of age on the date of the initial removal . . . and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial probability that the child . . . may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing." (§ 366.21, subd. (e).) Here, the court found by clear and convincing evidence that reasonable services have been provided to the parents, that parents did not comply with their case plans and made no progress towards alleviating the causes necessitating the children's placement out of the home, and that there is no likelihood the children would be returned to their custody within the following six months.

Parents challenge the sufficiency of the evidence in support of the court's finding that the department provided reasonable reunification services. In "[determining] whether substantial evidence supports the trial court's [reasonable services] finding, [we review]

---

[3] Under California Rules of Court, rule 8.450(e)(4)(B), father's notice of intent was required to have been filed by March 6, 2013. Because father's notice of intent was filed on March 8, this court issued a special order directing father to address whether his notice of intent was timely filed. Father's response establishes that the untimely filing occurred as a result of a scheduling error by counsel. Based on this showing of good cause, father is relieved of the untimely filing. (Cal. Rules of Court, rule 8.450(d); *Jonathan M. v. Superior Court* (1995) 39 Cal.App.4th 1826, 1831.)

the evidence in a light most favorable to the prevailing party and [indulge] in all legitimate and reasonable inferences to uphold the court's ruling." (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598.) " 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Id*. at pp. 598–599.) "Services will be found reasonable if the Department has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult.' " (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.)

Based on the allegations in the petitions, jurisdiction was originally established and the children were later removed from their home because of, among other things, domestic violence in the home and mother's inability to provide necessary medical and dental treatment for the children. In conjunction with the case plan, the department provided referrals to numerous family services providers, including Humboldt Family Service Center, Humboldt Domestic Violence Services, and Healthy Moms. The department also referred parents to parenting classes and to facilities for drug and alcohol evaluation and assessments. The department arranged weekly supervised visits for parents and children and made monthly contact with parents to review parents' progress and discuss any challenges parents were facing in meeting the case plan requirements. The department's six-month review report advises that both parents were "referred several times to parenting, [alcohol or other drug] treatment and counseling but they have rarely participated." The report continues, "Pursuant to Welfare and Institutions Code section 366.21 (g), the mother has regularly and consistently visited the children. It should be noted that the visits remain supervised [for parents] and they visit the children together. The parents have been reported to be late to almost every visit. In addition, the quality of the visits are not always positive and in fact are extremely upsetting and detrimental to the children. The mother does not have appropriate parenting skills and the toxic relationship between [father] and mother expands to include [the children] during

6

visits. The family dysfunction is apparent on the visits and due to the mother's inability to understand and meet the emotional and physical needs of the children and her lack of compliance with any portion of the reunification case plan the visits overtime have stagnated and remain filled with the untreated negative family dynamic that was present at the beginning of this case. [Father] has not regularly and consistently visited [D.A.] The quality of the visits is poor. Father fails to engage with his child or [J.B.] on visits. He has had several angry outbursts during visits against mother and [J.B] and on one occasion father's anger towards . . . staff was so extreme and dangerous 911 was almost called. It is also reported by [D.A.'s] foster mom and continues to be reported that [D.A.] suffers from nightmares following every visit her father attends. The parents have no understanding of how their toxic relationship negatively impacts the children. . . . The parents have made no progress in their case plan requirements and in fact the mother recently tested positive for methamphetamine at the birth of the newborn sibling and mother and father tested positive for methamphetamine on December 5, 2012 and missed tests on 4/18/12, 5/1/12, 5/10/12 and 12/19/12, which are considered as dirty tests. . . .The mother has also continued to deny there is any domestic violence in the relationship between her and [father]. The mother has been referred to Humboldt Domestic Violence Services on several occasions but has not engaged in services. The father has failed to engage in anger management or other individual counseling. Based on the parents denial and absolute non-compliance with the case plan there is no substantial probability the children would be returned to the parents, who remain an intact couple, if the court were to extend services to the one year date." This evidence more than amply supports the trial court's findings.

Parents' arguments to the contrary are not persuasive. Both parents argue that the social worker's involvement in the case was "very limited" and that he did not maintain regular contact with them. Mother cites a page in the reporter's transcript of the review hearing at which she claims the social worker testified that he spoke to her only twice about her case plan requirements. The transcript, however, does not support mother's characterization. The social worker did not testify that he spoke with her only twice

7

during the entire reunification period, but rather that he spoke to her only twice between August 10, 2012, when he took over the case, and October 22, 2012, when R.A. was born. This is largely consistent with his statement that he made monthly contact with parents to review their progress and discuss any challenges they were encountering. While he acknowledged that he was out of the office "on a workers comp issue" between September 23 and October 31, he testified that someone else acted as the social worker in the case in his absence. The fact that a section 300 petition was filed following R.A.'s birth in October confirms that someone was supervising the case in his absence. Moreover, even if the department missed one monthly contact while the assigned social worker was on leave, that would not establish that the department's supervision as a whole was unsatisfactory.

Both parents also challenge the sufficiency of the services provided regarding their drug abuse. Mother faults the department for requesting she drug test on only three occasions, "all toward the end of the review period." The record reflects, however, that mother was referred to substance abuse programs throughout the reunification period, including drug testing in April and May of 2012. Moreover, the increased testing reasonably corresponded with the positive drug test at the birth of the youngest sibling.

Father acknowledges that he was referred for an alcohol and drug abuse assessment in May 2012 and claims that it was determined that he did not need any services. The social worker testified that although there were no allegations in the complaint regarding father's drug use, he "[s]trongly encouraged [father] to utilize the county [alcohol and other drug] services and asked at least on two occasions about his attendance, and his response has been that he doesn't use drugs or alcohol." Father argues that although he tested positive twice for methamphetamine use, no nexus has been shown between his occasional drug use and his ability to parent his child. Nothing in the record suggests, however, that the court or social worked placed undue emphasis on father's positive drug tests. They are but part of his overall failure to engage in services.

Father also makes much of the fact that in November 2012 he was required to pay, perhaps mistakenly, for an assessment for a domestic violence class. The social worker

8

testified that beginning in March or April of 2012, father was referred to anger management and individual counseling and that father was informed that payment for the counseling would be made by the county. The social worker testified that father did not engage in services until November 2012 when he attended an assessment and in January, during the week of the review hearing, when he attended his first group counseling session. Father states in his petition that he was required to pay for the November 2012 assessment. The social worker did not know why father was required to pay and agreed that the department should have been billed. The fact that father may have mistakenly been required to pay for the assessment, contrary to the department's usual procedures, does not establish that reasonable services were not provided. Nothing in the record suggests that the cost of the program caused father's failure to participate sooner or more regularly.

Finally, father argues that the social worker's report, including its characterization of the visits with the children, was not objective and that the social worker "admitted that he included only negative evidence to support his pre-conceived opinion of what the outcome should be." The social worker in fact testified that while there were some "good visits," there were "so many entries that illustrate parenting that appears to be detrimental . . . that on this report what I did was list those incidents." In any event, the social worker's opinion was subject to cross-examination and the court reasonably believed his testimony that the overall quality of the visits was poor.

Accordingly, we find no error in the termination of reunification services and setting of a section 366.26 hearing for D.A.

2.    *The trial court did not err in terminating reunification services and setting a section 366.26 hearing as to J.B.*

Mother contends that substantial evidence does not support the trial court's finding that D.A and J.B. were part of a sibling group within the meaning of section 361.5, subdivision (a)(1)(C) so that her reunification with 12-year-old J.B. should be subject to

the more restrictive time limits applicable to his then three-year-old sister.[4] In deciding whether an older minor is part of a sibling group, the court must consider the following factors: "(a) whether the children were removed from parental care as a group; (b) the closeness and strength of the sibling bond; (c) the siblings' ages; (d) the appropriateness of maintaining the group together; (e) the detriment to each child if sibling ties are not maintained; (f) the likelihood of finding a permanent home for the group; (g) whether the group is currently placed together in a preadoptive home or has a concurrent plan goal of legal permanency in the home; (h) the wishes of each child whose age and condition permits a meaningful response; and (i) the best interest of each child in the group. Additionally, the court must specify the factual basis for its finding that it is in each child's best interest to schedule a section 366.26 hearing for some or all of the members of the sibling group." (*Abraham L.* v. *Superior Court* (2003) 112 Cal.App.4th 9, 14; see also California Rules of Court, rule 5.710(d).)

In this case the court found that J.B. was part of a sibling group with D.A. and R.A. The court explained, "I've analyzed all of the factors under rule 5.710(d) and Welfare and Institutions Code section 366.21(e), and those are briefly summarized as follows: [¶] First, I find that [J.B.] and [D.A.] were removed as a group. They appeared to have a close bond to each other. They are approximately eight years apart, which is at the upper end of where you might find such a bond, but certainly within that range. [¶] I find that it is appropriate to maintain the children together, if possible. They have not been together as far as their placement more recently because of the special needs for [D.A.] and [J.B] that require that they be in certain homes. I think that there would be a

---

[4] Section 361.5, subdivision (a)(1)(C) provides: "For the purpose of placing and maintaining a sibling group together in a permanent home should reunification efforts fail, for a child in a sibling group whose members were removed from parental custody at the same time, and in which one member of the sibling group was under three years of age on the date of initial removal from the physical custody of his or her parent or guardian, court-ordered services for some or all of the sibling group may be limited as set forth in subparagraph (B). For the purposes of this paragraph, 'a sibling group' shall mean two or more children who are related to each other as full or half siblings."

detriment to the children if their sibling ties are not maintained. They appear to be upset if they can't see each other at visits. [¶] As to the likelihood of finding a permanent home for the children as a group, there is apparently a possible placement that's currently under review. They are not currently together and that's a reference to their special needs which appear to be significantly improving that would not allow them to be together. [¶] It has been discussed that their wishes are unknown, but I'm not sure that that's really true because [J.B.] and [D.A.] certainly like being together and they like their visits and they are upset if they can't see each other. So, I think their wishes are to be together. And as far as the best interests, I think it is attempting to keep them together because they certainly like being together." The court's finding is supported by the social worker's report, which states that "although the children are not currently placed together, the department has provided regular sibling visitation for the children and the siblings enjoy a very strong connection to each other" and the report submitted by J.B.'s CASA, which indicates that J.B. is "very happy about seeing his sister" at their weekly visits and that the siblings have "an excellent time when they are together."

Mother argues that although the children were removed together and at that time may have had a significant bond, they have not been placed together since their detention and the permanent plans recommended by the department, adoption for D.A. and long term foster care for J.B., will necessary result in the severing of their sibling ties. She argues that "if [J.B.] is not part of a sibling group under three, then he continues to have a chance of permanency by returning to his mother, whom he resided with for the first 10 years of his life." While the children's future relationship is largely uncertain, substantial evidence nonetheless supports the court's finding that the children's current bond warrants treating them as a sibling group and at least attempting to keep them together.

Moreover, any potential error in this respect was harmless because substantial evidence independently supported termination of services and setting of section 366.26 hearing for J.B. In *In re Derrick S.* (2007) 156 Cal.App.4th 436, 450 the court, while emphasizing "the critical importance of reunification services," recognized nonetheless that "there are some situations where a juvenile court may in the exercise of its discretion

11

terminate reunification services earlier than the applicable default period . . . of 12 months." The court explained that under the plain language of sections 361.5, subdivision (a), and 366.21, subdivision (e), "the juvenile court has the discretion to terminate the reunification services of a parent at *any time after it has ordered them*, depending on the circumstances presented" and that where the record shows that "the likelihood of reunification is extremely low [and] a continuation of the reunification period would waste scarce resources and delay permanency for dependent minors," the court may terminate services prior to the 12-month review. (156 Cal.App.4th at p. 447.)

In this case, mother began receiving voluntary services as early as March 2011 and formal services with the filing of the non-detained petition in November 2011. Thus, by the time of the six-month review in January 2013, mother had been receiving services for almost two years. Mother's case plan with respect to J.B. was identical to her plan for D.A. and as noted above, the court found that reasonable services had been provided and that mother had completely failed to engage in services. Under these circumstances, the court did not abuse its discretion in terminating reunification services and setting a section 366.26 hearing for J.B.

3.     *The trial court did not err in denying reunification services with respect to R.A. and in setting a section 366.26 hearing.*

The court denied reunification services as to R.A., making findings under both section 361.5, subdivisions (b)(10) and (b)(13). Mother does not challenge the sufficiency of the evidence in support of the court's bypass of services under subdivision (b)(13) and on that basis alone her petition could be denied. Father, however, correctly asserts that there is no substantial evidence to support the court's finding that he has "a history of extensive, abusive, and chronic use of drugs or alcohol and [has] failed or refused to comply with a program of drug or alcohol treatment described in a case plan . . . on at least two prior occasions." As noted above, no jurisdictional findings were sustained regarding father's drug use or abuse and there is no evidence that on two prior occasions he failed to comply with a court-ordered program. Accordingly, we must consider the parents' argument that the court erred by continuing the dispositional hearing in R.A.'s

12

case until after reunification services had been terminated for the older children, thereby allowing services to be bypassed under section 361.5, subdivision (b)(10).

Under section 352, subdivision (b), the court may continue a dispositional hearing for a child who has been removed from his or her parents' custody beyond the 60-day statutory time limit only upon a showing of exceptional circumstances.[5] The circumstances must be viewed in light of the minor's best interest and substantial weight shall be given "to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a).) The trial court's ruling on a request for a continuance is reviewed for an abuse of discretion. (*In re Ninfa S*. (1998) 62 Cal.App.4th 808, 811.)

In this case, whether viewed as the granting of the department's motion to consolidate or its request to trail, the result is the same. The court continued R.A.'s disposition hearing for just under two weeks in order to resolve issues in the older siblings' case that potentially would have a significant impact on the outcome of the dispositional hearing in R.A.'s case.

Relying on a footnote in *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, parents argue that a continuance under such circumstances is an abuse of discretion as a matter of law. In *Riverside*, the court held that the section 361.5, subdivision (b)(10) bypass provisions may be applied so long as the factual predicate, i.e., the termination of parental rights or reunification services, occurs in the first case before a disposition is made in the second case. (71 Cal.App.4th at p. 491; see also *Marlene M. v. Superior Court* (2000) 80 Cal.App.4th 1139, 1148.) In so

---

[5] Section 352, subdivision (b) provides: "(b) Notwithstanding any other provision of law, if a minor has been removed from the parents' or guardians' custody, no continuance shall be granted that would result in the dispositional hearing, held pursuant to Section 361, being completed longer than 60 days after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring such a continuance. The facts supporting such a continuance shall be entered upon the minutes of the court."

ruling, the court rejected the argument that such a rule would lead to procedural gamesmanship. The court explained, "As a last note on this subject, we point out that even if actions taken after the filing of a dependency petition affect a parent's status under subdivision (b)(10) of section 361.5, it is unlikely that [the Department of Social Services] (or the comparable agency in any county) could routinely use a 'tactical' termination of rights or selection of a permanent plan as to a sibling of the subject minor to bring the statute into play. If a minor is detained in custody, the jurisdictional hearing is required to be held within 15 days of the filing of the petition. [Citation.] Continuances require a showing of good cause. [Citation.] If the minor is found to be a dependent child, the dispositional hearing is to be held within 30 days if denial of services is an issue. [Citation.] Thus, if a parent insists upon prompt proceedings, it is not likely that [the department] would be able to rush ahead with a proceeding as to the other child which would bring subdivision (b)(10) of section 361.5 into play, *unless such* a proceeding were already in prospect." (71 Cal.App.4th at p. 490, fns. omitted.) The court added, "We also assume that a trial court would look askance at any request by either side for either a continuance or an advancement designed solely with section 361.5, subdivision (b)(10) in mind." (71 Cal.App.4th at p. 490, fn. 15.) Contrary to parents' argument, we do not read footnote 15 as establishing a rule that a continuance should never be granted when the circumstances implicate section 361.5, subdivision (b)(10). Rather, the footnote indicates that courts should be cognizant of the impact of the bypass provisions when deciding whether exceptional circumstances support a request for a continuance.

In this case, the trial court rejected any suggestion that the department acted in bad faith when it requested the matter trail so that it could recommend services be bypassed for R.A. after services were terminated for the older siblings. Because the record before this court does not include a transcript of the January 22 hearing, we do not have the benefit of the court's explanation for granting the department's request. We do not believe, however, that under the circumstances of this case, the short continuance granted to allow for resolution of the older siblings' case would constitute an abuse of discretion. There is no evidence that services provided with respect to the older siblings were cut

short merely so that the bypass statute would apply to R.A. Rather, the record establishes that the parents were offered nearly two years of formal and informal services and made only minimal progress toward reunification. Likewise, because R.A. was detained upon her birth and there was no likelihood that she would be returned home at the dispositional hearing, the continuance did not negatively impact her interest in timely placement. We need not rely on this ground, however, as any potential error with respect to the short continuance was harmless.

Section 361.5, subdivision (a)(2) authorizes the termination of court-ordered reunification services prior to the six-month review hearing upon a showing that changed circumstances or new evidence support application of a bypass condition.[6] Had the court proceeded with the dispositional hearing on January 10 and ordered services, it could have, and undoubtedly would have, terminated those services 12 days later when the grounds for bypass under section 361.5, subdivision (b)(10) were established. Accordingly, any error with regard to the continuance was harmless.[7]

---

[6] Section 361.5, subdivision (a)(2) provides in relevant part, "Any motion to terminate court-ordered reunification services . . . prior to the [six-month review hearing] . . . shall be made pursuant to the requirements set forth in subdivision (c) of Section 388." Subdivision (c)(1) of section 388 provides in relevant part, "Any party, including a child who is a dependent of the juvenile court, may petition the court, prior to [the six-month review hearing], to terminate court-ordered reunification services provided under subdivision (a) of Section 361.5 only if one of the following conditions exists: [¶] (A) It appears that a change of circumstance or new evidence exists that satisfies a condition set forth in subdivision (b) or (e) of Section 361.5 justifying termination of court-ordered reunification services."

[7] In light of this conclusion, we need not reach parents' argument that the court lacked authority to consolidate the proceedings. We note, however, that consolidation was undoubtedly permissible under either the court's inherent powers to carry out their duties and ensure the orderly administration of justice (see Cal. Const., art. VI, § 1; *In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264) or Code of Civil procedure section 1048 (see *In re Claudia E.* (2008) 163 Cal.App.4th 627, 636 ["application of a statute outside the Welfare and Institutions Code (and not expressly made applicable) is not necessarily barred from dependency proceedings. Courts should determine whether the statute at issue is consistent with the overall purposes of the dependency system"]).

15

**Disposition**

The petition for an extraordinary writ is denied on the merits. (§ 366.26, subd. (l); Cal. Rules of Court, rule 8.452(h).) The request for a stay is denied as moot. Our decision is final immediately. (Cal. Rules of Court, rules 8.452(i), 8.490(b).)

_____
Pollak, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.