Filed 2/15/22  In re Z.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re Z.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E077439 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J288934 & J288935) |
| v. | OPINION |
| H.E., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, and Richard W. Van Frank, Deputy County Counsel, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

H.E. (Mother) is the mother of one-year-old Z.O., 10-year-old Zal.M. (Zal), and eight-year-old Zac.M. (Zac).[1] Mother challenges the juvenile court's dispositional orders bypassing her reunification services pursuant to Welfare and Institutions Code[2] section 361.5, subdivision (b)(10) as to Zal and Zac. We find no error and affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Dependency as to Z.O.*

In March 2020, the San Bernardino County Children and Family Services (CFS) detained Mother's youngest child Z.O. at birth, after Z.O. had tested positive for methamphetamine. Z.O. remained in the hospital to receive treatment for drug exposure, premature birth requiring that he be placed on a ventilator, and syphilis. Mother subsequently left the hospital, took Zal and Zac to Sonora, California, and failed to keep in communication with the hospital.

In late-April 2020, Z.O. was formally removed from parental custody. On May 1, 2020, CFS filed a petition on behalf of Z.O. pursuant to section 300, subdivisions (b)

---

[1] Z.O. is not a subject of this appeal. A.O. is an alleged father of Z.O. Zac.M. Sr. (Father) is the presumed father of Zal.M. and Zac.M. The fathers are not parties to this appeal.

[2] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

(failure to protect) and (g) (no provision for support) based on Mother's substance abuse, the parents leaving Z.O. without adequate provisions for care, and the parents unknown whereabouts. At the detention hearing on May 4, 2020, the juvenile court formally ordered Z.O. detained from his parents and placed in an appropriate placement upon his medical release.

On September 23, 2020, the juvenile court found the section 300, subdivision (b) allegations true, dismissed the subdivision (g) allegations, declared Z.O. a dependent of the court, and provided Mother with reunification services.[3] Approximately seven months later on April 15, 2021, the juvenile court terminated Mother's services due to her failure to participate in her court-ordered case plan. The court found by a preponderance of the evidence that custody by Mother continued to be detrimental to Z.O.'s welfare and best interest. The court further found by clear and convincing evidence that CFS had provided Mother with reasonable reunification services to overcome problems leading to Z.O.'s continued custody, that Mother failed to regularly participate and make substantive progress in her court-ordered case plan, and that Mother failed to visit and contact Z.O. for a period of six months or longer. The court also found the permanent plan of adoption to be appropriate for Z.O. and continued the matter to August 12, 2021, for a section 366.26 hearing.

---

[3] The juvenile court found A.O. to be an alleged father not entitled to receive reunification services.

B. *Current Dependency as to Zal and Zac*

On March 30, 2021, CFS received a general neglect referral on behalf of Zal and Zac based on Mother's youngest child being detained for a positive methamphetamine drug screen and Mother leaving the hospital and taking Zal and Zac to Sonora. The referral also stated that Mother failed to keep in contact with the social worker during Z.O.'s dependency case and failed to provide the location of Zal and Zac to the court. During a court hearing, Mother was asked to provide the whereabouts of Zal and Zac, but only reported that the children were with a maternal aunt in Lake Arrowhead. CFS's initial efforts to contact Mother and the maternal aunt were unsuccessful. Father was incarcerated with a release date of April 28, 2021.

On April 19, 2021, CFS received a call from an anonymous relative, who expressed concerns regarding Zal and Zac. The relative explained that on April 19, 2021, Mother picked up the children from a step-aunt and indicated that she was going to send the children to the maternal grandmother in Hawaii to avoid CFS detaining the children. The relative further reported that Mother was "'bouncing back and forth from San Bernardino and Nevada'" and that the children had not been in school for several months. CFS contacted the San Bernardino Unified School District and were informed that there were no school records for Zal and Zac.

On April 19, 2021, CFS obtained a detention warrant to detain Zal and Zac. When a social worker and law enforcement attempted to serve Mother with the warrant, she refused to state where the children were located. The children were located as Mother

walked towards the back of the property. The children reported that they had been in Mother's custody since their sibling was detained, and that they had not been in school for about one year. On April 20, 2021, a CFS social worker accidentally heard a phone conversation between Mother and an unknown person in which the unknown person advised Mother to "kidnap" the children.

On April 21, 2021, petitions were filed on behalf of Zal and Zac pursuant to section 300, subdivisions (b) (failure to protect), (g) (no provision for support), and (j) (abuse of sibling) based on Mother's substance abuse issues, failure to participate in substance abuse treatment, and open dependency case in Z.O.'s case, and Father's substance abuse criminal history, knowledge of Mother's ongoing substance abuse, and his failure to provide provisions of support to the children.

On April 22, 2021, the juvenile court formally detained Zal and Zac from parental custody and maintained them in foster care. The court informed Mother that no reunification services may apply pursuant to section 361.5, but ordered CFS to provide services to the parents pending the development of a case plan. The court also provided Mother with supervised visitation once a week for two hours and ordered Mother to submit to a drug and alcohol test that day. The court informed Mother that failure to report for random drug testing would be deemed positive. The court also made a finding that California was the children's home state. The court believed that Mother posed a flight risk, noting that an inquiry under oath had been made to Mother in half-sibling Z.O.'s case regarding the whereabouts of Zal and Zac because of concerns regarding

5

Mother's role in hiding the children from CFS, and that the information Mother had provided under oath did not appear to be consistent with the children's description or the relative's description.

CFS recommended that the juvenile court find true the allegations in the petitions, remove the children from parental custody, deny reunification services to the parents pursuant to section 361.5, subdivisions (b)(10) and (b)(11), and set the matter for a section 366.26 hearing. CFS confirmed Mother's dependency case involving Z.O., including the circumstances of Z.O.'s removal from Mother, the allegations found true against Mother, and the termination of Mother's reunification services in Z.O.'s case. CFS informed the court that Mother had tested positive for amphetamines and marijuana on April 20 and April 22, 2021. CFS also noted that Mother had failed to participate in a scheduled May 6, 2021 interview with the social worker. Mother, however, attended her scheduled visits with the children with no concerns and the children liked visiting with their mother.

CFS pointed out Mother's prior child welfare history, which began in February 2013 when Zal was two years old and Zac was two days old. Mother had two substantiated allegations against her for general neglect and one substantiated allegation for caretaker absence/incapacity. The first general neglect allegation was substantiated against Mother from a referral received on February 4, 2013, and the other referral received on March 5, 2020. From February 11, 2013 to August 30, 2016, CFS had received five referrals against Mother for general neglect, at risk sibling, emotional

6

abuse, and physical abuse.  These referrals were found to be either "inconclusive" or "unfounded."

The juvenile court set the matter for a contested jurisdictional/dispositional hearing.  The court ordered CFS to reassess Father for services and provide him with pre-dispositional services, and to prepare an update for the contested hearing addressing the progress of both parents in services.

On June 23, 2012, CFS reported that Mother had failed to accept responsibility for her actions and had failed to take advantage of the services provided to her.  Mother's whereabouts were unknown, and CFS was unable to contact Mother as she did not have a working phone number.  Mother failed to drug test on June 4 and June 8, 2021 and her drug test for June 21, 2021 was pending.

The contested jurisdictional/dispositional hearing was held on June 23, 2021.  At that time, the juvenile court took jurisdiction under section 300, subdivision (b).  Mother's counsel had offered no evidence on her behalf.  The court declared the children dependents of the court, removed them from parental custody, maintained them in foster care, and ordered reunification services for Father.  The court thereafter heard argument concerning services for Mother.  The parties confirmed that denial of reunification to Mother pursuant to section 361.5, subdivision (b)(11), did not yet apply as the section 366.26 hearing for in Z.O. was not set to be heard until August 12, 2021.

Mother's counsel argued that Mother should receive reunification services for the children because Mother "had been trying for several weeks to reach the social worker

and has asked for predisposition services several times" but no referrals had been given. In response, CFS's counsel noted that there was no evidence supporting Mother's counsel's argument that Mother had been trying for several weeks to reach the social worker for pre-dispositional services and that Mother had hid Zal and Zac from CFS. CFS's counsel argued that Mother had failed to participate in any services or visit Z.O. and as a result a section 366.26 hearing for adoption was set for August for 2021 in Z.O.'s case. The juvenile court denied reunification services to Mother in Zal and Zac's case pursuant to section 361.5, subdivision (b)(10). The court did not believe reunification services to Mother were in the children's best interests. The court noted that Mother had hid the children when she previously claimed the children were in her care, she failed to drug test on June 4 and June 8, 2021, and CFS consistently had difficulty contacting Mother. The court ordered supervised visitation for both parents and set the matter for a six-month review hearing. Mother timely appealed.

## III.

## DISCUSSION

Mother contends the juvenile court erred in bypassing reunification services for her pursuant to section 361.5, subdivision (b)(10) because it was not in the children's best interests. We disagree.

"'As a general rule, reunification services are offered to parents whose children are removed from their custody in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of

8

preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5, subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' [Citations.] [¶] Section 361.5, subdivision (b) 'reflects the Legislature's desire to provide services to parents only where those services will facilitate the return of children to parental custody.' [Citations.] When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be '"an unwise use of governmental resources.""' (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence, bearing in mind the juvenile court was required to apply the heightened clear and convincing evidence standard of proof. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.) When the juvenile court is required to apply the clear and convincing standard of proof, "the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.*, *supra*, at p. 1011.)

Section 361.5, subdivision (b)(10)(A), authorizes a juvenile court to deny services to a parent when "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling . . . and that, according to the findings of the court, this parent . . . has not

9

subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ."

As explained in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, "the Legislature intended to restrict provision of reunification services in the case of a parent who previously had failed to reunify. 'The exception at issue here, section 361.5, subdivision (b)(10), recognizes the problem of recidivism by the parent despite reunification efforts. Before this subdivision applies, the parent must have had at least one chance to reunify with a different child through the aid of governmental resources and fail to do so. Experience has shown that with certain parents, . . . the risk of recidivism is a very real concern. Therefore, when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful. Further, the court may still order reunification services be provided if the court finds, by clear and convincing evidence, that reunification is in the best interests of the child. (§ 361, subd. (c).)'" (*Id*. at pp. 744-745.)

"To apply section 361.5, subdivision (b)(10), therefore, the juvenile court must find both that (1) the parent previously failed to reunify with a sibling [or half sibling] and (2) the parent has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling [or half sibling]." (*In re Albert T*. (2006) 144 Cal.App.4th 207, 217.)

Mother's reunification services for the children's half sibling Z.O. were terminated on April 15, 2021, prior to the juvenile court's disposition in the current case bypassing

10

services for Mother on June 23, 2021. This satisfies the first prong of the section 361.5, subdivision (b)(10), requirement. (See *Riverside County Dept. of Public Social Services v. Superior Court* (1999) 71 Cal.App.4th 483, 491 [under § 361.5, subd. (b)(10), the "only requirement" is that the predicate action "occurred" before the disposition hearing at which bypass is ordered].)

The second prong of the bypass provision provides that the juvenile court must find that "th[e] parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ." (§ 361.5, subd. (b)(10)(A).) Overwhelming evidence shows that Mother made no effort to treat the problems that led to Z.O.'s removal. Indeed, Mother does not argue that she had subsequently made reasonable efforts to treat the problems that led to the removal of Z.O. from her custody. Rather, she claims that the juvenile court should have ordered reunification services because services were in the children's best interests and the children would benefit from them. Mother's arguments for receiving services is that (1) the children would benefit from having a sober parent and the record shows she had been using drugs only for the past 15 months, which is not unreasonable considering the pandemic and having raised the children for over nine years without any issues; (2) the children being out of school for over a year was not unreasonable given the global pandemic; (3) she had a bond with the children as evidenced by Zal reporting to have enjoyed visits with his mother and the children's counsel informing the court that "[t]hey cried for Mom"; and (4) the children had been moved to three different foster homes.

11

Once a court has determined a bypass exception applies, like the juvenile court did here, the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources. (*Renee J. v. Superior Court*, *supra*, 26 Cal.4th at p. 744; *In re William B.* (2008) 163 Cal.App.4th 1220, 1227 (*William B.*).) Thus, a juvenile court may not order reunification services for the parent unless the court finds, by clear and convincing evidence, "that reunification is in the best interest of the child." (§ 361.5, subd. (c)(2).) "The burden is on the parent to . . . show that reunification would serve the best interests of the child." (*William B.*, *supra*, at p. 1227.)

A juvenile court has broad discretion when determining whether further reunification services would be in the best interests of the child. (§ 361.5, subd. (c)(2); *William B.*, *supra*, 163 Cal.App.4th at p. 1229.) We review the court's determination of the child's best interest for abuse of discretion. (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 64-65; *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124-1125.) Under that standard, we will reverse the juvenile court's ruling only if it is arbitrary, capricious, or patently absurd resulting in a miscarriage of justice; we indulge all reasonable inferences to support the juvenile court's decision. (*In re Carlos H.* (2016) 5 Cal.App.5th 861, 866.)

While the concept of what is in a child's best interest is an "elusive guideline" not subject to rigid definition (*William B.*, *supra*, 163 Cal.App.4th at p. 1227), courts have considered "the parent's current efforts, fitness, and history; the seriousness of the

12

problem that led to the dependency; the strength of the parent-child and caretaker-child bonds; and the child's need for stability and continuity." (*In re Allison J.*, *supra*, 190 Cal.App.4th at p. 1116). In making its determination, a court may also consider a parent's failure to respond to previous services. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 109.)

We find the juvenile court here did not abuse its discretion in finding that it was not in the children's best interests to offer Mother reunification services. The court noted that Mother had hid the children when she previously claimed the children were in her care, she failed to drug test on June 4 and June 8, 2021, and CFS consistently had difficulty contacting Mother. The record supports these findings, and Mother does not argue otherwise.

We reject Mother's first argument that her drug use was not long-standing and that the children would benefit from her receiving services to become a sober parent. This argument focuses on Mother's interest in reunification, and not the children's best interests. Furthermore, Mother had been given an opportunity to combat her substance abuse issues, but failed to take advantage of the services provided to her or make herself available to CFS to determine the extent of her substance abuse issues. She may have only had a substance abuse history for the past 15 months, but Mother refused to be interviewed by CFS and thus the extent of her substance abuse was unknown. Nonetheless, it appears highly unlikely that Mother's substance abuse history spanned for only 15 months. The record indicates that Z.O. had tested positive for methamphetamine

13

at birth in March 2020 and had to remain in the hospital due to being drug exposed. Mother obviously was abusing methamphetamine prior to Z.O.'s birth. Moreover, Mother's child protective history began in February 2013 when Zal was two years old and Zac was two days old. The first general neglect allegation was substantiated against Mother from a referral received on February 4, 2013. A reasonable interpretation from the record is that Mother had a substance abuse history.

We also reject Mother's remaining contentions. Although there is no question that the pandemic had affected children's schooling globally, the pandemic is not an excuse to avoid CFS contact, runaway with the children, hide the children's whereabouts, continue to abuse drugs, and failure to participate in any services for over 15 months. Mother failed to combat the issues leading to Z.O.'s removal, as well as Zal and Zac's removals. Furthermore, because Mother refused to be interviewed by CFS, the extent of her bond with the children was unknown. While the children reported enjoying visits with their mother, had cried for their mother, and had been moved to several foster homes, the record thoroughly supports a finding that Mother was unlikely to successfully utilize reunification services, and thus those services would not ultimately inure to the children's benefit. (See *In re Jesse W.* (2007) 157 Cal.App.4th 49, 66 ["[T]he court's focus was properly on the futility of providing services . . . to a parent who has had no interest in reunifying, regardless of how the other parent is situated."].)

Beyond the evidence showing that the children had moved to several placements and the children liked visits with their mother, the record is devoid of any showing it

would be in the children's best interests given Mother's unsuccessful attempts to reunify with the children's half-sibling, Mother's avoidance with CFS, Mother's history with CFS, Mother's failure to participate in pre-dispositional services in Zal and Zac's case, and the substance abuse issues that led to the children's removal. The children's purported bond with Mother alone was insufficient to support a best interest finding. (*William B.*, *supra*, 163 Cal.App.4th at p. 1229.)

We find that the juvenile court did not abuse its discretion in determining Mother failed to carry her burden to show ordering reunification services was in the children's best interests. The court did not err in bypassing Mother's reunification services.

IV.

DISPOSITION

The juvenile court's dispositional orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.

15